## MORRIS PLAN BANK OF FORT WORTH v. CONTINENTAL NAT. BANK OF FORT WORTH.

### No. 14281.

Court of Civil Appeals of Texas.
Fort Worth.
Oct. 24, 1941.

408

Touchstone, Wight, Gormley & Touchstone, of Dallas, for appellant.

W. M. Short and J. E. Whitmore, both of Fort Worth, for appellee.

SPEER, Justice.

The judgment from which this appeal is prosecuted was rendered in the Tarrant County Court at Law No. One.

The facts in the case are stipulated and all parties are bound by them. Three banks are involved; they are all located in the City of Fort Worth, Texas.

Prior to the matters involved in the suit, Morris Plan Bank was approached by a Mrs. C. W. Doyle, who represented herself to be Mrs. E. B. (Mollie) Holden, and advised the bank that her husband, E. B. Holden, desired to borrow $162. She was furnished with a blank application, to be signed by E. B. Holden. She later returned with the signed application. The bank furnished her with a note filled in for the amount and terms of the loan. She later returned with the note signed in the name of "E. B. Holden", as maker, and "A. K. Freeman" and "J. B. Griffin", as sureties. Actually, Mrs. Doyle had forged the names of the purported signers to the application for the loan and to the note.

E. B. Holden is and had been for some time prior to the transactions, a resident of the City of Fort Worth, and his name and telephone number appeared in the telephone directory. The bank did not call Holden or make any effort to verify either his signature or those of the sureties.

When the note, thus signed, was returned, Morris Plan Bank executed its check on its depository, the First National Bank, for $162, payable to E. B. Holden or order, and placed it with Mrs. Doyle for delivery to E. B. Holden. Mrs. Doyle then forged the endorsement of E. B. Holden and Mollie Holden on the back of the check. She took the check to Continental National Bank, where she represented herself to be Mrs. Mollie Holden, and received from that bank the cash and surrendered the check. Continental National Bank made no effort to verify the endorsements on the check, although E. B. Holden had formerly kept an account with that bank.

The Continental National Bank endorsed the check and guaranteed all prior endorsements. The check was presented to the First National Bank, (the drawee) through the Fort Worth Clearing House, and the last named bank credited Continental National Bank with the amount. Because of the forged endorsements on the check, the First National Bank did not charge the check to Morris Plan Bank's account.

First National Bank of Fort Worth, Texas, to which we shall refer as "First Bank", sued Continental National Bank, to which we shall refer as "Continental", for the amount of the check and Continental interpleaded Morris Plan Bank, to which we shall refer as "Morris Plan". Conti-

nental asked that it be awarded a judgment over against Morris Plan for any sum recovered by First Bank in its action.

First Bank recovered against Continental and the latter recovered over against Morris Plan, on its interpleader. Morris Plan has appealed.

We have been cited to no case decided in this State, and we have been unable to find one, in which the question before us has been determined.

We think that under the facts stipulated between the parties, Morris Plan is not liable to Continental on the latter's pleading and prayer, over.

We think the controversy here is determinable from Section 23 of Article 5932, R.C.S., known as the Negotiable Instrument Act. That section reads: "When a signature is forged or made without the authority of the person whose signature it purports to be, it is wholly inoperative, and no right to retain the instrument, or to give a discharge therefor, or to enforce payment thereof against any party thereto, can be acquired through or under such signature, unless the party, against whom it is sought to enforce such right, is precluded from setting up the forgery or want of authority."

 The expression found in the latter part of the above quoted section of the Negotiable Instrument Act, is an exception from the general rule. It will be noted that the rule above announced shall apply, "unless the party, against whom it is sought to enforce the right, is precluded from setting up the forgery or want of authority." The word "precluded" as used here, means "estopped". Brannon's Negotiable Instrument Law, 4th Ed., page 183. Since it is indisputably true that Continental paid the check on a forged endorsement, it could not hold Morris Plan for its issuance of the check unless the latter was estopped from relying upon the forged endorsement.

Continental says in its brief that it does not charge Morris Plan with negligence in delivering the check to Mrs. Doyle, as it did, but that its negligence in the matter was the manner in which it enabled Mrs. Doyle to commit the forgery. It is our view that the incidents in connection with accepting by Morris Plan from Mrs. Doyle of the forged note upon which it relied when the check was issued and delivered to her, can find no causal connection, nor was it a proximate cause of the Continen-

tal paying the check on a forged endorsement. All of the preceding transactions could have been had to the detriment of Morris Plan, and Continental would never have been concerned about it, if Morris Plan had not issued the check payable to the order of Holden and delivered it to Mrs. Doyle for transmission to Holden; yet Continental says it is not complaining of the delivery of the check, but of negligence of Morris Plan in the manner in which it negotiated the transaction with Mrs. Doyle.

In American Sash & Door Co. v. Commerce Trust Co., 332 Mo. 98, 56 S.W.2d 1034, 1038, by the Supreme Court of Missouri, it was said: "By the overwhelming weight of authority the negligence of a depositor [applicable to Morris Plan in this case] which will relieve the drawee bank from cashing on a forged endorsement his check delivered to one person, but made payable to the order of another, must be such as relates to the forgery or its detection and the payment of the check, not to the mere mistaken issuance thereof. * * * It is not simply a question of using due care [by the paying bank] and of offsetting negligence against contributory negligence." The opinion holds that to be a defense against payment on a forged endorsement, the negligence of the drawer must be of such a nature as to interfere with the paying bank's performance of its contract, and being in effect a representation by the drawer which amounts to an estoppel. It is pointed out that even the negligent delivery of the check to a person other than the payee is not the proximate cause of the loss sustained by the bank on which it is drawn, when paid on a forged endorsement. It is said there are two intervening causes of the loss. First, the forgery by the wrong doer, and second, the negligence of the bank in cashing the check when not endorsed by the payee. Decisions are cited in support of the rule, from many jurisdictions where Section 23 of our Article 5932, supra, was involved.

 It is elemental that if a bank pays a check to one other than the actual payee or to his order, or is mistaken as to the payee's identity or is paid upon a forged endorsement of payee, the bank is responsible. Daniel On Negotiable Instruments, 6th Ed., section 1618.

 It may be conceded that Morris Plan Bank was ever so careless in promis-

ing to Mrs. Doyle a loan to Holden, yet that negligence was only remotely connected with the payment by Continental of the check to Mrs. Doyle on the forged endorsement of Holden. Let us suppose that Mrs. Doyle was in fact instructed by Holden to ascertain if he could get the loan from Morris Plan, and the bank had assented and told Mrs. Doyle to get the note signed by Holden, and that she went out and forged Holden's name to the note, in exchange for which the bank delivered its check to her, payable to Holden or order, and she had then forged the endorsement of Holden and cashed the check at Continental; in such circumstances the last mentioned bank could not recover against the drawing bank for its payment.

To illustrate: If A should be guilty of negligence at some time prior to an act complained of by B, that negligence would not necessarily render A liable to B unless there was a causal connection between the negligent act and the act of which B complains. A's negligent act must have been the proximate cause of the damages before B can recover. Morris Plan took the forged note from Mrs. Doyle under the erroneous belief that it was accepting the obligation of Holden, and if it had paid to Mrs. Doyle the cash in exchange for the note it would have suffered the loss, but under the facts before us, it took the precaution to deliver to Mrs. Doyle a check, payable to Holden or order, for delivery to Holden. By the terms of the check, Morris Plan knew that no one but Holden or another upon his order could lawfully receive the money. If Continental had faithfully observed the terms of the check it would have suffered no loss.

In the stipulation of facts, after reciting the transactions leading up to the issuance and delivery of the check by Morris Plan to Mrs. Doyle, it is said: "The check having been placed with Mrs. C. W. Doyle for delivery to E. B. Holden as a part of the loan transaction, she then proceeded to forge the endorsement of E. B. Holden and Mollie Holden on the back of the check." We fail to see how Continental's duties and responsibilities to pay only to Holden or his order would have been changed, if Morris Plan had taken a forged note from Mrs. Doyle, one upon which it could never collect, and then issue its check payable to Holden or order and deliver it to Mrs. Doyle "for delivery to E. B. Holden". Irrespective of the nature of the transaction had between the Morris Plan and Mrs. Doyle, it was the imperative duty of Continental, before paying it, to see that it was paid either to Holden, the payee, or his order. The vice in the transaction is that Continental paid the check on the forged order or endorsement of Holden.

Many of the cases cited by both parties to this appeal involve transactions between banks and parties where the names of fictitious persons were used. Others involve transactions where one party assumed to act under some name other than his own and the name used may or may not have been a fictitious person. The points discussed there are not in this case and it is needless to enumerate them. In this case Morris Plan knew it was not dealing with E. B. Holden because the applicant was a woman, who represented herself to be Holden's wife. The check being payable to E. B. Holden or order, the drawer was safe in assuming that even though it was delivered to Mrs. Doyle, whom it thought was Mrs. Holden, the check would have to be endorsed by Holden or by some one authorized to so endorse it. The Continental was in duty bound to see that this was done, before it would be justified in cashing it. E. B. Holden had at one time been a customer of Continental and aside from this, that bank was in as good position as any other bank to satisfy itself that the endorsement was genuine.

▇ The judgment of the trial court awarding recovery to First National Bank against Continental National Bank was correct (Fidelity & Deposit Co. of Maryland v. Fort Worth National Bank, Tex. Com.App., 65 S.W.2d 276), and to this extent the judgment is left undisturbed. In so far as the judgment entered was in favor of Continental National Bank against Morris Plan Bank, the judgment of the trial court is reversed and judgment is here rendered in favor of Morris Plan Bank.

Reversed and rendered in part and left undisturbed in part.