SOCIETY NATIONAL BANK OF CLEVELAND, APPELLEE, *v.* CAPITAL NATIONAL BANK, ET AL., APPELLANTS.

(No. 31413—Decided April 13, 1972.)

*Messrs. Thompson, Hine & Flory,* for appellee.
*Messrs. Hollingsworth & Hollingsworth,* for appellant.

WASSERMAN, C. J. This is an appeal from an action to recover the amount of plaintiff's cashier's checks, totaling $4,500 and paid by plaintiff appellee bank to defendant appellant banks over a payee's forged indorsement.

The facts and evidence are stipulated as follows:

In October 1964, Fred Rzepka, a customer of Society National Bank of Cleveland (hereinafter Society) drew two checks totaling $4,500 on Society payable to the ABS Company and delivered them to William Mishler, a selling agent of the payee company. Mishler forged the payee's indorsements on the two checks, signed his own name, and obtained from Society in exchange, two cashier's checks, payable as before to the ABS Company. He also forged the indorsements on the cashier's checks and deposited them in an account titled "Windows, Inc.," which he maintained at defendant Capital National Bank (hereinafter Capital). Capital transferred the checks to defendant Union Commerce Bank which in turn presented them to Society for payment. Society paid the checks. After more than a year, Fred Rzepka informed Society that the indorsements had been forged, whereupon Society promptly notified Union Commerce, the presenting bank, and Capital, the depositary bank, of the forgeries. Society reimbursed its customer's account and brought this action against defendant appellant banks to recover the amount paid. Judgment was rendered for the plaintiff from which defendants have filed a timely appeal.

Appellants claim the decision below was contrary to law because (1) Fred Rzepka was negligent in issuing the checks to the forger and Society did not assert this defense against him, and (2) Society was negligent in issuing the cashier's checks over a forged indorsement. This appears to be a case of first impression in this state, al-

though similar factual situations have been reported in other jurisdictions. The issues are clear and their resolution uncomplicated and altogether predictable. We affirm the judgment below.

Ohio adopted the Uniform Commercial Code (hereinafter UCC) in 1962 and it is to this law that we shall look for a solution of this problem. The case before us involves two separate transactions, the first concerning the forged payee's indorsements on drawer-Fred Rzepka's checks, and the second, the forged indorsements on Society's cashier's checks. Only the second set of circumstances caused any monetary loss to the parties.

A cashier's check is a bill of exchange drawn by a bank upon itself and accepted by the act of issuance. R. C. 1303.46. In issuing the cashier's checks, Society, rather than Rzepka, became primarily liable on them. The collection procedure began with Capital, with transfer to Union Commerce and ultimate presentment to Society for payment. Both Capital and Union Commerce are collecting banks by definition. R. C. 1304.01(A)(15).[1] During these procedures, banks who transfer or present items for payment or acceptance make certain warranties to the transferee or the payor bank. These warranties, which travel with the item, are spelled out in the Ohio Revised Code. The pertinent provisions are:

Section 1303.53

"(A) Any person[2] who obtains payment or acceptance and any prior transferor warrants to a person who in good faith pays or accepts that:

"(1) he has a good title to the instrument[3] or is authorized to obtain payment or acceptance on behalf of one who has good title * * *.

---

[1] R. C. 1304.01 (A)(15): "'Collecting bank' means any bank handling the item for collection except the payor bank."

[2] R. C. 1301.01(DD): "'Person' includes an individual or an organization." R. C. 1301.01 (BB): "'Organization' includes a corporation.* * *."

[3] R. C. 1301.01 (A)(5): "'Instrument' means a negotiable instrument."

"(B) Any person who transfers an instrument and receives consideration warrants to his transferee and if the transfer is by indorsement to any subsequent holder who takes the instrument in good faith that:

"(1) he has a good title * * *

"(2) all signatures are genuine or authorized * * *." Section 1304.13

"(A) Each customer or collecting bank who obtains payment or acceptance of an item and each prior customer and collecting bank warrants to the payor bank * * * that:

"(1) he has a good title to the item or is authorized to obtain payment or acceptance on behalf of one who has good title * * *."

The comment to these sections states that this portion of the Code "retains the generally accepted rule that the party who accepts or pays does not 'admit' the genuineness of indorsements, and may recover from the person presenting the instrument when they turn out to be forged." R. C. 1303.53, Comment (3). The reason for not holding the payor-drawee bank liable where there is a forged indorsement is that the drawee "has ordinarily no opportunity to verify an indorsement." *Id.*

This was the banking practice in Ohio and elsewhere, even before the adoption of the Uniform Commercial Code, although different theories were advanced to justify the payor's recovery. In *Canal Bank* v. *Bank of Albany* (N. Y. 1841), 1 Hill 287, the Court of Appeals permitted recovery on the theory that the payor bank had paid on the item under a mistake of fact and that under these circumstances good title could not be passed. See *Krinsky* v. *Pilgrim Trust Co.* (1958), 337 Mass. 401, 149 N. E. 2d 665; *Aetna Casualty & Surety Co.* v. *Lindell Trust Co.* (Mo. App. 1961), 348 S. W. 2d 558. The theory of an implied warranty of the genuineness of prior indorsements was used to permit a drawee bank to recover from a depositary bank for checks paid over a forged indorsement in *Security Sav. Bank* v. *First Natl. Bank* (6th Cir. 1939), 106 F. 2d 542. The same

results, using a warranty theory, have obtained in many pre-Code decisions. See, e. g., *Standard Accident Ins. Co. v. Pellecchia* (1954), 15 N. J. 162, 104 A. 2d 288; *Hibernia Natl. Bank v. Natl. Bank of Commerce* (1943), 204 La. 777, 16 So. 2d 352; *Citizen's Bank of Hattiesburg v. Miller* (1943), 194 Miss. 557, 11 So. 2d 457; *Morris Plan Bank v. Continental Natl. Bank* (Tex. Civ. App. 1941), 155 S. W. 2d 407; *P. & H. Finance Co. v. First State Bank* (1939), 185 Okla. 558, 94 P. 2d 894; *Hartford Accident & Indemnity Co. v. First Natl. Bank* (1938), 61 Ohio App. 217, 22 N. E. 2d 517; *City of New York v. Bronx County Trust Co.* (1933), 261 N. Y. 64, 184 N. E. 495.

Even without the warranty sections of the U. C. C., the universal banking practice that collecting banks stamp the words "Prior Indorsements Guaranteed," or an abbreviation thereof (e. g. P. E. G.), as was done in the case at bar, gives a guarantee against forged indorsements to the drawee or payor bank. With the adoption of the U. C. C. in all but one American jurisdiction (Louisiana), the necessity of a "Prior Indorsements Guaranteed" type of indorsement in bank collections no longer exists. Under the U. C. C., both a transferor (Capital) and a presenting bank (Union Commerce) warrant to the payor that they have good title to the instrument. R. C. 1303.53 (A) (1) and (B) (1), 1304.13 (A) (1) and (B) (1), *supra.* A forged instrument will break the chain of title and after the forgery good title to order paper cannot be passed.

Appellants claim negligence on the part of the drawer Fred Rzepka. We find none. He drew a check to his creditor, the ABS Co., and delivered it to William Mishler, an acknowledged agent of the payee with whom Rzepka had previously dealt. Even if he had been lax in the conduct of his business affairs, mere laxity is not sufficient to prevent him from recovering against the drawee bank for the amount charged against his account and paid by the drawee over a forged indorsement, unless the lax conduct was the proximate cause of the loss. Annotation 39 A. L. R. 2d 641, 649, 652 (1953). Nor does negligent delivery of a

check by the drawer to one not the payee necessarily preclude the drawer from asserting the forged indorsement, unless the negligent delivery proximately caused the loss. *Id.* at 652-54.

The delivery of the checks to Mishler did not proximately cause the loss to plaintiff-bank. The check was neither misdirected, nor sent to a different person of the same name as the payee, and appellants' reliance on *S. Weisberger Co.* v. *Barberton Sav. Bank Co.* (1911), 84 Ohio St. 21, 95 N. E. 379, is therefore misplaced. Appellants' reference to R. C. 1304.29 is also inappropriate. This section states, in part:

"(E) If under this section a payor bank has a valid defense against a claim of a customer upon or resulting from payment of an item and waives or fails upon request to assert the defense, the bank may not assert against any collecting bank or other prior party presenting or transferring the item a claim based upon the unauthorized signature or alteration giving rise to the customer's claim."

This section deals, as is apparent in (A),[4] with the customer's discovery of "his unauthorized signature or any alteration on an item." Alteration is defined in R. C. 1303.43. Neither the customer's unauthorized signature nor an alteration of the item is in this case.

Since there is no evidence that customer Rzepka was negligent in delivering the check to forger Mishler, he is

---

[4]R. C. 1304.29 (A): "When a bank sends to its customer a statement of account accompanied by items paid in good faith in support of the debit entries or holds the statement and items pursuant to a request or instructions of its customer or otherwise in a reasonable manner makes the statement and items available to the customer, *the customer must exercise reasonable care* and promptness to examine the statement and items *to discover his unauthorized signature or any alteration on an item* and must notify the bank promptly after discovery thereof. (B) *If the bank establishes that the customer failed with respect to an item to comply with the duties* imposed on the customer by division *(A) of this section, the customer is precluded from asserting* against the bank: (1) *his unauthorized signature or any alteration on the item* if the bank also establishes that it suffered a loss by reason of such failure; * * *." (Emphasis added.)

not, by the language of R. C. 1303.42 "precluded from asserting * * * lack of authority [to indorse] * * * against a drawee * * * who pays the instrument in good faith and in accordance with the reasonable commercial standards of the drawee's or payor's business." We have interpreted this section, as have appellants, to apply to the problem of forged indorsements, although it is by no means certain that such was the original intent of the drafters. *Cf. U. S. Fidelity & Guaranty Co.* v. *First Natl. Bank* (5th Cir. 1949), 172 F. 2d 258. Thus it is clear that there is no defense to be asserted by Society against its customer, Rzepka.

Nor has there been any negligence on Society's part in issuing the cashier's checks. A substantially similar situation came before the Oklahoma Supreme Court in *First Natl. Bank* v. *Liberty Natl. Bank & Trust Co.* (Okla. 1964), 392 P. 2d 747. There the plaintiff-bank was held not to have been negligent in failing to require proper identification and secure proper indorsement on a check drawn upon a depositor of the bank. The check was later found to bear a forged indorsement. The plaintiff bank issued to the payee its cashier's check as a substitute for the check carrying the forged indorsement, in much the same way as in the case at bar. Liability fastened on the bank which actually gave out money for the cashier's checks deposited with it and also bearing forged indorsements. The Oklahoma Supreme Court found, as we do here, that it was the responsibility of the bank which gave money for the cashier's checks to determine that the indorser and the named payee were one and the same. Accord, *Hibernia Natl. Bank* v. *Natl. Bank of Commerce* (1943), 204 La. 777, 16 So. 2d 352. A more recent case, *First Natl. Bank of Mineola* v. *Farmers & Merchants State Bank* (Tex. Civ. App. 1967), 417 S. W. 2d 317, is also in point. In this case, bank money orders, which are essentially the same as cashier's checks, were made payable to certain existing payees and were obtained from plaintiff bank by a person who gave bad checks for them. This person forged the payees' indorsements and deposited the funds in first defendant-bank, which for-

warded the money orders to second defendant-bank. Both defendant-banks indorsed the money orders "P. E. G." Subsequently, plaintiff bank paid them. The Texas Appellate Court, in entering judgment for the plaintiff bank, held that plaintiff as drawee had both a legal cause of action upon the express warranties guaranteeing the genuineness of all prior indorsements as well as an equitable cause of action for money had and received. "It is the payment of the money orders to defendants, who had no legal right to collect them, which constitutes plaintiff's loss, and it is clear that defendants' guarantees were designed to cause this payment." *Id.*, at 327. See *Heusinger Hardware Co.* v. *First Natl. Bank of San Antonio* (Tex. Civ. App. 1963), 367 S. W. 2d 710; *First Natl. City Bank* v. *Manufacturer's Trust Co.* (County Ct. 1963), 39 Misc. 2d 428, 240 N. Y. S. 2d 669; *Mohawk Natl. Bank of Schenectady* v. *Citizens Trust Co.* (County Ct. 1963), 38 Misc. 2d 222, 237 N. Y. S. 2d 956.

With respect to appellants' contentions that plaintiff did not observe "reasonable commercial standards of business" in issuing its cashier's checks, the cited cases show that it is the collecting or depositary bank which is not observing reasonable standards when, as here, it cashes checks (cashier's or otherwise) without ascertaining that the indorser and payee are identical.

Having decided that appellants' assignments of error are without merit, we affirm the judgment below.

*Judgment affirmed.*

MANOS and DAY, JJ., concur.