IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 8, 2001 Session

# THE BANK/FIRST CITIZENS BANK v. CITIZENS AND ASSOCIATES, ET AL.

**Appeal from the Circuit Court for Bradley County**
**No. V-97-922      Russell Simmons, Judge**

**FILED JULY 6, 2001**

**No. E2000-02545-COA-R3-CV**

CHARLES D. SUSANO, JR., J., concurring in part and dissenting in part.

I concur in so much of the majority opinion as holds that Citizens is precluded from raising an issue on appeal as to the dismissal of First Tennessee Bank. I disagree, however, with the majority's conclusion that the facts do not preponderate against the trial court's finding that Citizens was 80% at fault for the loss occasioned by Frieda Gray's forgery. In my judgment, Citizens did not engage in negligent conduct that substantially contributed to the forgery, as that concept is embodied in T.C.A. § 47-3-406. Accordingly, I would hold that the Bank, who was clearly negligent in allowing checks made payable to a business to be deposited directly into an individual's bank account, was 100% at fault for the loss.

The majority, upon finding that Wilburn and Bush, as representatives of Citizens, were "very experienced" businessmen, concludes that Citizens was negligent in delivering the checks to Gray "without having any written documentation and without ever verifying her authority or the terms of the alleged agreement with Allied." The majority supports its conclusion by stating that "[n]umerous cases have addressed a drawer's negligence or failure to exercise ordinary care such as entrusting a third party to deliver a check to the payee, and failing to adequately investigate the transaction, as is present here." In my judgment, the cases cited by the majority do not support its decision in the instant case.

In *Thompson Maple Products, Inc. v. Citizens National Bank,* 234 A.2d 32 (Pa. Super. Ct. 1967), the drawer was a logging company, whose employees had entrusted *blank* sets of delivery slips to an independent log hauler who regularly made deliveries to the company on behalf of local suppliers. The hauler filled in the blank slips to show fictitious deliveries of logs from the suppliers. The hauler then delivered the slips to the company bookkeeper, who prepared checks payable to the suppliers and entrusted the hauler to deliver them. The hauler then forged the endorsements of the payees and cashed the checks. The Superior Court of Pennsylvania found that the drawer conducted

its business affairs "in so negligent a fashion as to have 'substantially contributed'" to the forgeries. *Id.* at 34-35. In so holding, the court noted that the company's regular practice of making blank delivery slips readily available to haulers and entrusting haulers with completed checks to be delivered to third parties, along with the company's other lax business practices, were sufficient to support a finding that the company's negligence substantially contributed to the making of the unauthorized signatures. *Id.* at 35-36.

In *Fidelity and Deposit Co. v. Chemical Bank New York Trust Co.,* 318 N.Y.S.2d 957 (N.Y. App. Div. 1970), a representative of a brokerage firm received a call from a friend stating that he had recently met two people who wished to sell securities through the firm. The friend advised the representative to verify that the securities were transferable. The representative made unsuccessful attempts to do so, but made no attempt to verify the identities of the purported sellers or whether in fact they owned the securities at issue. Nevertheless, the firm sold the securities and issued checks for payment to the sellers. The securities were later discovered to have been stolen. The court, finding that the brokerage firm had failed to follow the "know your customer" rule, a well-established custom in the business, concluded that the firm was negligent and that its negligence substantially contributed to the issuance of the checks for the stolen securities. *Id.* at 959.

In the third case cited by the majority, *Union Bank & Trust Co. v. Elmore County National Bank,* 592 So.2d 560 (Ala. 1991), the drawer was a bank that approved a car loan based upon a forged bill of sale. Without verifying the purchase with the car dealership, the bank issued to the forger a check payable to the forger and the car dealership's title agent as joint payees. The forger fraudulently endorsed the name of the title agent on the check and deposited the money in his own account at the defendant bank. The drawer bank sued the defendant bank for breach of duty to authenticate the endorsement and breach of implied warranty. The Supreme Court of Alabama reversed the grant of summary judgment to the defendant bank, noting that "[a]lthough the trial court discussed a number of facts that indicated negligence on the part of [the drawer bank], and although those facts might be found to have proximately caused the making of the forgery, these facts cannot establish the defense under Ala. Code 1975, § 7-3-406, as a matter of law." *Id.* at 563. The case was thus remanded for a trial on the merits. *Id.*

In my opinion, the authorities relied upon by the majority are not dispositive of the case before us because none of these cases involve the delivery of an instrument to *an agent* of the payee. In *Thompson Maple Products*, the drawer was found to be negligent in entrusting the forger with checks payable to third parties. In *Fidelity and Deposit Co.,* the brokerage firm was found to be negligent because it failed to verify the identities of the payees and whether they in fact owned the securities at issue. In *Union Bank & Trust Co.,* the drawer delivered to the forger a check payable to the forger and the title agent as joint payees. These cases involve the delivery of an instrument to a party when another entity, unrelated to the party who received the instrument, is, in fact, the payee. That is not the case here. Gray was, without question, an employee of Allied and was authorized to receive documents and checks for her employer. The instant case is more factually similar to *Society National Bank v. Capital National Bank,* 281 N.E.2d 563 (Ohio Ct. App. 1972). In that case, Rzepka, a customer of Society National Bank, drew two checks payable to the ABS

Company and delivered them to Mishler, a selling agent of ABS. Mishler forged ABS's endorsements on the checks, signed his own name, and obtained from Society National Bank two cashier's checks payable to ABS. Mishler again forged the endorsements and deposited them in his account. The defendants argued that Rzepka was negligent in issuing the checks to Mishler. The Ohio Court of Appeals disagreed:

> Appellants claim negligence on the part of the drawer Fred Rzepka. We find none. He drew a check to his creditor, the ABS Co., and delivered it to William Mishler, an acknowledged agent of the payee with whom Rzepka had previously dealt.

*Id.* at 566. Although UCC § 3-406 was not implicated in **Society National Bank**, the rationale of that case is nevertheless relevant to the instant case. Gray was "an acknowledged agent of the payee." *See* 281 N.E.2d at 566. In fact, she was more than just a lower-level employee or agent; she was the branch manager of Allied's Cleveland office, and Wilburn and Bush had observed her there in that capacity. Based upon the evidence of her employment and her authority as a branch manager with the company, I do not find that Citizens acted unreasonably in expecting Gray, as an agent of Allied, to deliver the checks to her employer. I therefore would not find that Citizens failed to exercise ordinary care when it delivered the checks to her.

In addition to concluding that Citizens was negligent in delivering checks to Gray "without ever verifying her authority," the majority finds that Citizens was negligent in that it delivered the checks (1) without any written documentation and (2) without verifying the terms of the agreement with Allied. I believe this analysis misconstrues the issue in this case. The issue is not, as the majority seems to believe, whether Gray had the apparent authority to bind Allied to a contract to sell Citizens a franchise for upper East Tennessee; nor is the issue whether such a contract ever came into existence. Furthermore, the issue is not whether Allied is liable for the forgery of Gray. Were any of these issues before us, I would not hesitate to find them adverse to Citizens. However, the finding of negligent conduct on the part of Citizens *vis-a-vis* the franchise contract is not the same as a finding of negligence that substantially contributed to the forgery.

In my judgment, the real issue in this case is whether Citizens acted reasonably in expecting an identified branch manager of Allied to deliver a check intended for Allied, and made payable to it, to the branch manager's principal, *i.e.*, Allied. To find that Citizens acted negligently, one has to find fault in its belief that it was secure in giving an admitted agent a check that, in order to be properly negotiated, had to be endorsed by the principal. It seems clear to me that *Gray's status as a branch manager was sufficient indicia of her authority to warrant giving her a check for delivery to her principal.* Citizens had absolutely no reason to suspect that an admitted agent, whose identity was well known to both Citizens and Allied, and whose whereabouts were apparently well known in Cleveland, would commit such a brazen criminal act. This is not a situation where a drawer gives a check to a stranger with the hope that he or she will deliver the check to the payee.

In the context of T.C.A. § 47-3-406, I do not find in Citizens' conduct the type of "failure to exercise ordinary care" that I feel is contemplated by that statute, nor do I find the requisite nexus to the forgery. Accordingly, I respectfully dissent from so much of the majority opinion as pertains to Citizens' suit against the Bank. I would reverse the trial court's judgment and render judgment in Citizens' favor against the Bank.

_____
CHARLES D. SUSANO, JR., JUDGE