IN THE SUPREME COURT OF TENNESSEE
AT KNOXVILLE
May 1, 2002 Session

# THE BANK/FIRST CITIZENS BANK  v.  CITIZENS AND ASSOCIATES

**Appeal by Permission from the Court of Appeals, Eastern Section**
**Circuit Court for Bradley County**
**No. V-97-922      Hon. Russell E. Simmons, Jr., Judge**

---

**No. E2000-02545-SC-R11-CV - Filed July 19, 2002**

---

This case involves the application of Tennessee Code Annotated section 47-3-406 to determine who bears the loss of a bank's acceptance of forged instruments.  The drawer issued three checks payable to a mortgage company and delivered these checks to a branch manager of that company for transfer to the main office.  The manager, however, forged the endorsement of the company and deposited these checks into her personal bank account.  In a suit to recover the funds, the trial court applied section 47-3-406 and found that both the drawer and the depository bank failed to exercise ordinary care.  It then allocated the loss between the parties as eighty percent to the drawer and twenty percent to the bank.  A majority of the Court of Appeals affirmed.  On appeal to this Court, we hold that the bank may not assert that the drawer is precluded from asserting the forgery against it under section 47-3-406, because it did not show that any failure by the drawer to exercise ordinary care substantially contributed to the making of the forged endorsements.  The judgment of the Court of Appeals is reversed.

**Tenn. R. App. P. 11 Application for Permission to Appeal;**
**Judgment of the Court of Appeals Reversed**

WILLIAM M. BARKER, J., delivered the opinion of the court, in which FRANK F. DROWOTA, III, C.J., and E. RILEY ANDERSON, ADOLPHO A. BIRCH, JR., and JANICE M. HOLDER, JJ., joined.

Charles W. Kite, Sevierville, Tennessee, for the appellant, Citizens and Associates.

George N. McCoin and Thomas F. Bloom, Cleveland, Tennessee, for the appellee, The Bank/First Citizens Bank.

## OPINION

### FACTUAL BACKGROUND

In January 1997, Allied Mortgage Capital Company ("Allied Mortgage") opened a branch office in Cleveland, Tennessee, and shortly thereafter, it hired Ms. Frieda Gray as its branch manager for this office. In this capacity, Ms. Gray possessed the authority to conduct the day-to-day operations of the branch and to make loans. Ms. Gray was also authorized to receive, hold, and forward monies and documents to Allied Mortgage at its principal place of business in Texas.

The next month, Ms. Gray, representing herself as a branch manager of Allied Mortgage, contacted a land-development partnership, Citizens and Associates, about opening a branch office of Allied Mortgage in upper-east Tennessee. Ms. Gray hosted a seminar in Knoxville for about fifteen or twenty people to show how profitable investing in Allied Mortgage could be. Following this seminar, Citizens and Associates agreed to invest in the mortgage company in order to compliment its other land development interests. Ms. Gray stated that she would handle the transaction, and she obtained information from Citizens and Associates which she said was necessary for the main office to approve the investment.

Over the next thirty days, Citizens and Associates issued three checks to Allied Mortgage, in the total amount of $50,000.02, and it gave these checks to Ms. Gray for delivery to Allied Mortgage's main office in Texas. However, Ms. Gray did not forward the checks to the main office. Instead, she endorsed each in the name of the corporation and deposited the instruments in her personal account at The Bank/First Citizens Bank ("First Citizens Bank") in Cleveland. First Citizens Bank, as the depository bank, presented these checks to the drawee bank in Knoxville, which paid the checks and deducted the amounts paid from Citizens and Associates' account.

Citizens and Associates soon discovered that a fraud had taken place. It contacted Allied Mortgage's main office and confirmed that Allied Mortgage does not license franchises and that Ms. Gray was not authorized to negotiate franchise agreements. Citizens and Associates then contacted First Citizens Bank and demanded repayment of the face amounts of the checks, but First Citizens Bank denied any liability on the instruments. The bank then filed suit in the Bradley County Circuit Court, seeking a declaration that it possessed no liability on the three checks.[1] Citizens and Associates filed a counterclaim against First Citizens Bank alleging that the bank failed to exercise ordinary care in taking the instruments.

Following a bench trial, the court applied Tennessee Code Annotated section 47-3-406 and found that First Citizens Bank failed to exercise ordinary care in taking the checks.[2] More

---

[1] The procedural history of this case is somewhat complex, ultimately involving six parties with a number of cross-claims, counterclaims, counter suits, and motions to intervene. Because the appeal in this Court involves only the dispute between Citizens and Associates and First Citizens Bank, we omit much of this procedural history to present a clearer picture of the issues involved between these two parties.

[2] Prior to this trial, First Citizens Bank filed a motion for summary judgment, claiming that it was entitled to judgment as a matter of law under the imposter defense of section 47-3-404. The court later denied the motion, finding that because Ms. Gray did not pretend to be any person other than herself—a branch manager for Allied Mortgage—First
(continued...)

specifically, the court concluded that the bank was negligent in permitting the deposit of checks made payable to a corporation into a personal account, especially when the corporation itself did not have an account with the bank. The court also found that Citizens and Associates was negligent in delivering the instruments to Ms. Gray without first confirming the transaction with Allied Mortgage. It then allocated the loss of the instruments, as required by section 47-3-406(c), as eighty percent to Citizens and Associates and twenty percent to First Citizens Bank. A final order confirming this ruling was entered on July 11, 2000.

Citizens and Associates appealed to the Court of Appeals, and a majority of that court affirmed the judgment of the trial court. The intermediate court found that the evidence supported the trial court's findings regarding the failure of both parties to exercise ordinary care. The majority also affirmed the trial court's allocation of the loss as supported by the evidence. However, in dissent, Judge Susano concluded that First Citizens Bank should be responsible for the entire loss. He found that because Ms. Gray was "without question an employee of Allied [Mortgage] and was authorized to receive documents and checks for her employer," Citizens and Associates did not fail to exercise the ordinary care contemplated by section 47-3-406(a).

We granted permission to appeal to Citizens and Associates to resolve the proper application of Tennessee Code Annotated section 47-3-406 in this case. We now hold that First Citizens Bank may not assert the defense provided by section 47-3-406. Although we conclude that the record supports a finding that First Citizens Bank took the instruments in good faith, the bank did not show that the failure of Citizens and Associates to exercise ordinary care substantially contributed to the actual making of the forged endorsements. The judgment of the Court of Appeals is reversed.

## STANDARD OF APPELLATE REVIEW

We accord the factual findings of the trial court a presumption of correctness, and we will not overturn those findings unless the evidence preponderates against them. See Tenn. R. App. P. 13(d); see also, e.g., Bogan v. Bogan, 60 S.W.3d 721, 727 (Tenn. 2001). However, with respect to legal issues, our review is conducted "under a pure *de novo* standard of review, according no deference to the conclusions of law made by the lower courts." Southern Constructors, Inc. v. Loudon County Bd. of Educ., 58 S.W.3d 706, 710 (Tenn. 2001).

## THE NEGLIGENT DRAWER DEFENSE OF TENNESSEE CODE ANNOTATED SECTION 47-3-406

Neither party before this Court disputes that First Citizens Bank may be held liable, under the proper circumstances, for taking an instrument on a forged endorsement. However, under the Tennessee Uniform Commercial Code ("TUCC"), First Citizens Bank has available several defenses that it may assert against Citizens and Associates to avoid or minimize such losses. In this case, the

---

[2] (...continued)
Citizens Bank could not invoke the imposter defense. The propriety of that ruling is not now an issue before this Court.

trial court applied the defense contained in section 47-3-406—often referred to as the negligent drawer defense—and while both parties agree that this section constitutes the applicable law,[3] they disagree as to who should bear the loss of the forged instruments under this provision.

Any interpretation of a statute must, of course, begin with its language. See, e.g., Lavin v. Jordon, 16 S.W.3d 362, 365 (Tenn. 2000). Section 47-3-406 reads as follows:

> (a) A person whose failure to exercise ordinary care substantially contributes to an alteration of an instrument or to the making of a forged signature on an instrument is precluded from asserting the alteration or the forgery against a person who, in good faith, pays the instrument or takes it for value or for collection.

> (b) Under subsection (a), if the person asserting the preclusion fails to exercise ordinary care in paying or taking the instrument and that failure substantially contributes to loss, the loss is allocated between the person precluded and the person asserting the preclusion according to the extent to which the failure of each to exercise ordinary care contributed to the loss.

> (c) Under subsection (a), the burden of proving failure to exercise ordinary care is on the person asserting the preclusion. Under subsection (b), the burden of proving failure to exercise ordinary care is on the person precluded.

Thus, viewing the statute in terms of this case, First Citizens Bank may assert that Citizens and Associates is precluded from asserting the forgery against the bank by showing (1) that it took the instruments in good faith; (2) that Citizens and Associates failed to exercise ordinary care; and (3) that this failure by Citizens and Associates "substantially contributed" to making of Ms. Gray's forged signatures. Tenn. Code Ann. § 47-3-406(a). However, even if Citizens and Associates is found to be precluded from asserting the entire loss against First Citizens Bank, it may nevertheless seek to shift the burden of the loss to the bank by showing (1) that First Citizens Bank failed to exercise ordinary care in taking the instrument; and (2) that this failure substantially contributed to the loss. See Tenn. Code Ann. § 47-3-406(b). The court may then apportion the loss to the extent "that the failure of each to exercise ordinary care contributed to the loss." Tenn. Code Ann. § 47-3-406(c).

"Each of these steps in section [47-3-406] presents a question of fact, ordinarily to be resolved by the fact finder." San Tan Irrigation Dist. v. Wells Fargo Bank, 3 P.3d 1113, 1118 (Ariz. Ct. App. 2000). Importantly, however, if First Citizens Bank cannot meet its initial burden of

---

[3] Importantly, section 47-3-406 provides a defense only against forged signatures and not against all unauthorized signatures. While Ms. Gray's endorsement of the checks in the name of Allied Mortgage was certainly unauthorized in her capacity as an agent of Allied Mortgage, the endorsement also constituted a forgery. See McConnico v. Third Nat'l Bank, 499 S.W.2d 874, 884 (Tenn. 1973) (defining forgery under the UCC with reference to state criminal statutes as being the making of any writing with the intent to defraud). Because Ms. Gray's intent to defraud is undisputed, we agree with the parties that section 47-3-406 applies in this case.

-4-

showing that Citizens and Associates is precluded from asserting the forgery against it, then the entire loss must be borne by the bank itself. Cf. John Hancock Fin. Servs. v. Old Kent Bank, 185 F. Supp. 2d 771, 779 (E.D. Mich. 2002) (denying preclusion under UCC section 3-406 because the bank did not show good faith in paying the instrument). We examine each of these elements in turn.

### FIRST CITIZENS BANK'S GOOD FAITH PAYMENT OF THE INSTRUMENTS

The first issue is whether First Citizens Bank took the instruments in good faith. Citing the general code definition of "good faith" in Tennessee Code Annotated section 47-1-102(19), First Citizens Bank asserts that it has met this standard because it acted with "honesty in fact" in taking the checks. A majority of the Court of Appeals agreed, noting that the record contains no evidence that "there was any dishonesty or collusion involved in the transaction." However, although the Court of Appeals ultimately appears to have applied the correct definition of "good faith" in this context, it did not specifically examine the proper definition of this term as it applies to TUCC Article 3. Consequently, to clarify the law in this area, we undertake a more detailed analysis of this issue.

In 1990, the American Law Institute and the National Conference of Commissioners on Uniform State Laws revised Articles 3 and 4 of the Uniform Commercial Code dealing with negotiable instruments, bank deposits, and collections. Prior to these revisions, the term "good faith" was defined in these articles by the general subjective standard of "honesty in fact." However, one of the more significant revisions to Article 3 was to redefine the term "good faith" to require a party to show that it acted with "honesty in fact" in the transaction *and* that it adhered to "reasonable commercial standards of fair dealing." See UCC § 3-103(a)(4).

In 1995, the Tennessee General Assembly substantially adopted Revised Articles 3 and 4, although, interestingly, it did not include the definition of "good faith" contained in UCC section 3-103(a)(4). Admittedly, there is some evidence that the legislature omitted the definition of this term inadvertently. For example, the legislature retained Official Comment [3] to section 47-3-103, which specifically refers to the definition of "good faith" as requiring "not only honesty in fact, but also 'observance of reasonable commercial standards of fair dealing.'" This comment is quite detailed, and it elaborates on the difference between the exercise of "ordinary care" and the observance of "reasonable commercial standards of fair dealing." One could also suppose that the inclusion of this Official Comment here is more than a mere anomaly, as comments in *three* other sections of Title 47 specifically refer to the definition of "good faith" as purportedly set forth in section 47-3-103(a)(4).[4]

Nevertheless, "[t]his court does not lightly assume drafting error by the Legislature." See People v. Robles, 5 P.3d 176, 182 (Cal. 2000). To the contrary, we presume that where the legislature departs from the language of a model act, it usually does so to express an intention different from the model act. See Heirs of Ellis v. Estate of Ellis, 71 S.W.3d 705, 713-14 (Tenn.

---

[4] See Tenn. Code Ann. §§ 47-3-311 cmt. 4, 47-4-103 cmt. 4, 47-4-406 cmt. 4.

2002); Kradel v. Piper Indus., Inc., 60 S.W.3d 744 (Tenn. 2001). We note that the presence of the unedited comments may not be as curious as first appears, especially considering that the General Assembly has, on at least one other occasion, adopted the official UCC comments verbatim even while otherwise departing from the uniform language of the statute itself. See Tenn. Code Ann. § 47-2-318 cmt. 3 (referring to all three alternative versions proposed by UCC section 2-318, even though the General Assembly ultimately adopted only Alternative A). Further, the Compilers Notes to section 47-3-103 specifically observe that the UCC's Article 3 definition of "good faith" has been omitted from the Tennessee statutes, and these Notes permit the General Assembly to correct any unintended oversight should it so desire. Consequently, we must conclude that the General Assembly intentionally omitted the UCC definition of "good faith" as it applies in Chapters 3 and 4 of Title 47, and we construe this term in accord with the general code definition to mean "honesty in fact in the conduct or transaction involved." See Tenn. Code Ann. § 47-1-201(19).

Applying the general code definitions in this context, we agree with the lower court that the record supports a finding that First Citizens Bank took the instruments in good faith. This Court has defined the "honesty in fact" standard to mean an absence of a "knowing or reckless disregard of a customer's rights." Glazer v. First Am. Nat'l Bank, 930 S.W.2d 546, 549 (Tenn. 1996) (defining "good faith" in section 47-1-102(19)). Our review of the record reveals that while First Citizens Bank was certainly negligent in permitting the deposit of a check made payable to a corporation into an individual account, no evidence shows that it knowingly disregarded the rights of anyone. Nor does a preponderance of the evidence support a finding that the bank acted recklessly in this regard. Therefore, we conclude that the record supports the conclusions of the lower courts that First Citizens Bank took the instruments in good faith.

### CITIZENS AND ASSOCIATES' FAILURE TO EXERCISE ORDINARY CARE AND ITS SUBSTANTIAL CONTRIBUTION TO THE FORGERY

Although the record supports a finding that First Citizens Bank took the instruments in good faith, section 47-3-406 also requires the bank to show that the drawer's failure to exercise ordinary care substantially contributed to the forgery of the instrument. Although the Court of Appeals reached a contrary conclusion, we cannot conclude that the bank has met its burden in this regard.

No reported case in this state has discussed the requirements of "ordinary care" or "substantial contribution" as they relate to the conduct of the drawer. However, the official comments shed some light on what was intended by these standards. For instance, Comment 2 to section 47-3-406 states that conduct is a substantial contribution to a forged signature if the conduct is a "contributing cause" of the signature and is "a substantial factor in bringing it about." The comment also notes that the "substantial contribution" standard "is meant to be less stringent than a 'direct and proximate cause' test" that prevailed prior to the UCC's adoption, thereby making the preclusion generally easier to establish.

Relying upon this comment, the Court of Appeals held that a drawer can be precluded under this section if the drawer negligently issues an instrument to a third party for delivery to the payee.

Though the intermediate court's analysis is not without some support,[5] several other courts have held that "only negligence which proximately relates or contributes to the forgery, *and not merely to the issuance of the checks*, would relieve a collecting bank of liability for improper payment of a fraudulently endorsed check." See, e.g., Vectra Bank v. Bank W., 890 P.2d 259, 263 (Colo. Ct. App. 1995) (emphasis added).[6]  Indeed, at least one court has held, as a matter of law, that the drawer's negligence in issuing the instrument, without more, cannot substantially contribute to the forgery within the contemplation of UCC section 3-406. See Guaranty Bank & Trust Co. v. Federal Reserve Bank, 454 F. Supp. 488, 490-91 (W.D. Okla. 1976) (addressing factual scenario in which a loan was negotiated and an instrument was delivered to a party not named as the payee).

This latter position certainly comports more closely with the plain language of section 47-3-406, which speaks only of the drawer's negligence being a substantial contribution "to the *making* of a forged signature." (emphasis added).  Consequently, we agree with those cases holding that a drawer's negligence leading to the unwarranted issuance of checks will not generally suffice to establish a defense under section 47-3-406.  Rather, the party asserting the preclusion must show some causal relationship between the lack of ordinary care and the actual making of the forged signature, such that the drawer's negligence can be said to have substantially contributed to the ability of the unauthorized person to forge the payee's name and to pose as the intended payee. See Fidelity Bank v. United Nat'l Bank, 630 F. Supp. 16, 20 (D.D.C. 1985) (citing Dominion Constr., Inc. v. First Nat'l Bank, 315 A.2d 69, 73 (Md. 1974)).

---

[5] See, e.g., Winkie, Inc. v. Heritage Bank, 299 N.W.2d 829, 833 (Wis. 1981) ("It is sufficient to point out in passing that this first preclusion of a drawer's claim would arise from negligence of the drawer in the process by which the check was issued, that is, prior to the presentment and payment of the checks.").  The comments to section 47-3-406 also give one example of when the issuing of an instrument can constitute a substantial contribution to the making of a forged signature:  when the drawer negligently issues a check to a person with the same name as the payee.  We note, however, that this example does not stand as authority for the larger holding made by the Court of Appeals.  Under the circumstances presented in the comment, the actual signature of the person taking the check would always constitute a forgery under the UCC, and as such, the drawer's negligence is clearly a substantial contribution to the forgery.  A much different case is presented when, as here, a check payable to a corporation is delivered to an agent of that corporation not bearing the same name.  Cf. Society Nat'l Bank v. Capital Nat'l Bank, 281 N.E.2d 563 (Ohio Ct. App. 1972).

[6] See also Bagby v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 491 F.2d 192, 197 (8th Cir. 1974) ("In the final analysis, we are convinced that the meaning of § 3-406 is best reflected by precluding a drawer from recovery under these or similar circumstances only where his negligent conduct contributes to the forgery, not merely to the unwarranted issuance of the checks, such as in the situation before us."); First Nat'l Bank v. MidAmerica Fed. Sav. Bank, 707 N.E.2d 673, 678 (Ill. App. Ct. 1999) ("The meaning of section 3-406 is best reflected by precluding a drawer from recovery under these or similar circumstances only where his negligent conduct contributes to the forgery, not merely to the unwarranted issuance of the checks." (citation and quotation marks omitted)); Twellman v. Lindell Trust Co., 534 S.W.2d 83, 90-91 (Mo. Ct. App. 1976) ("The U.C.C. seems to foresee a more direct type of contribution to a forgery. . . . We do not think that plaintiff's actions in trusting Londe and giving Londe a check which plaintiff had made payable to International Harvester could be said to have substantially contributed to Londe's forgery."); Maddox v. First Westroads Bank, 256 N.W.2d 647, 655 (Neb. 1977) (quoting and approving Bagby); Society Nat'l Bank, 281 N.E.2d at 566 ("Even if [the drawer] had been lax in the conduct of his business affairs, mere laxity is not sufficient to prevent him from recovering against the drawee bank for the amount charged against his account and paid by the drawee over a forged indorsement, unless the lax conduct was the proximate cause of the loss.").

Whatever negligence Citizens and Associates may have been guilty of in issuing the three checks payable to Allied Mortgage, we cannot say that it increased the possibility that Ms. Gray would forge the endorsement of Allied Mortgage and pose as the payee of the instruments to her bank. Citizens and Associates, for example, did not leave blank the name of the payees in the various checks or make the checks payable to Ms. Gray as an agent of Allied Mortgage. See Fidelity Bank, 630 F. Supp. at 20. Rather, Citizens and Associates only delivered these checks to an acknowledged agent of the payee that, according to testimony by an employee of Allied Mortgage, possessed the actual authority to receive checks on behalf of the payee. Without something more, this conduct alone simply cannot be said to have substantially contributed to the making of the forged endorsements.

Consequently, while the record supports the trial court's conclusion that Citizens and Associates was negligent in issuing the checks payable to Allied Mortgage, the record does not show that this negligence substantially contributed to the ability of Ms. Gray to forge the endorsements and pose as the actual payee. Accordingly, we hold that even if First Citizens Bank took the instruments in good faith, the bank cannot assert the negligent drawer defense of section 47-3-406 because it has not shown that any failure by Citizens and Associates to exercise ordinary care substantially contributed to the making of the forged endorsements.

## CONCLUSION

In summary, we hold that First Citizens Bank may not assert the negligent drawer defense under Tennessee Code Annotated section 47-3-406 to avoid the loss occasioned by its taking of instruments bearing forged endorsements. Although the record supports a finding that the bank took the instruments in good faith, it does not show that any failure by Citizens and Associates to exercise ordinary care substantially contributed to the making of the forged endorsements. Accordingly, the judgment of the Court of Appeals is reversed.

Costs of this appeal shall be paid by the appellee, The Bank/First Citizens Bank.

_____
WILLIAM M. BARKER, JUSTICE