IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
SEPTEMBER 20, 2002 Session

## FELICIA DENISE WEBB v. ERNEST BERNETT GILLESPIE

**Direct Appeal from the Juvenile Court for Shelby County**
**No. M5947      Harold W. Horne, Judge**

———————

**No. W2001-02828-COA-R3-JV - Filed February 24, 2003**

———————

This is a child support case. Father is the pastor of a church. Mother contends that Father uses a church bank account for his personal use. Mother argues that the funds in this account minus legitimate church expenses should be imputed to Father as income for purposes of calculating child support. The trial court found that it could not determine Father's income and, following the Child Support Guidelines, imputed $25,761.00 to him as income. We affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Juvenile Court Affirmed**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., joined and Holly K. Lillard, J., dissented.

William T. Winchester, Webb A. Brewer, Memphis, TN, for Appellant

Rev. Ernest Gillespie, III, *pro se*

## OPINION

### Facts and Procedural History

Felicia Denise Webb ("Mother") petitioned the Juvenile Court of Memphis and Shelby County for child support against Ernest Gillespie (Father). After a DNA test that showed a 99.999% probability that Father was the father of the child conceived during an adulterous affair, a juvenile court referee ordered Father to pay $506.00 per month for child support. The referee based this amount on findings that Father, as the president and pastor of the Pearly Gate Missionary Baptist Church ("Pearly Gate" or "the church"), earned a $13,000.00 per year salary, had a monthly mortgage of $1,100.00 paid by the church, had $625.00 per month in life insurance policies paid by the church, and on its finding that a $92.00 a month upward deviation was warranted because Father had not been exercising any visitation with the child. Father requested a hearing before the juvenile court judge to reconsider the amount of child support ordered.

At the hearing before a special juvenile court judge, the parties disputed the amount of income that Father makes. Father claimed that his income is $250 a week. Mother claimed that Father commingles his salary with other funds in various church accounts, particularly the "housing account," to such a degree that it is not clear how much he makes. Mother pointed to various checks written from the housing account for Father's personal expenses such as credit cards, and child support for another child to show the extent to which Father uses this account for his personal use. Father testified to expenses in excess of his monthly salary, but also testified that his wife pays a share of their house mortgage to him and that he deposits this money into the housing account. The juvenile court judge ruled that Father's income could not be determined and assigned him an income of $25,761.00 as directed by the Child Support Guidelines. This, along with credit for $231.00 a month already paid in support for another child, reduced Father's monthly child support obligation to $258.00 a month. Ms. Webb timely filed an appeal to this Court and presents the following issue for our review:

> Whether the trial court erred in not imputing the entire amount of income found in the church's housing account, less documented business expenses, to Father as personal income for the purpose of calculating child support.

**Standard of Review**

The findings of fact made by a trial court are given a presumption of correctness that will not be overturned unless the evidence preponderates against those findings. *See* Tenn. R. App. P. 13(d); *see also Bank/First Citizens v. Citizens and Assoc.*, 82 S.W.3d 259, 262 (Tenn. 2002) (citing *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001)). A trial court's ruling on a matter of law, however, will be reviewed "'under a pure *de novo* standard . . . according no deference to the conclusions of law made by the lower court[].'" *Bank/First Citizens*, 82 S.W.3d at 727 (quoting *Southern Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001)). When reviewing a trial court's decision to set the amount of child support, we apply the "abuse of discretion" standard. *State ex rel Vaughn v. Kaatrude*, 21 S.W.3d 244, 248 (Tenn. Ct. App. 2000).

**Law and Analysis**

The juvenile court judge, after a hearing that involved the testimony of several witnesses and introduction of numerous documents, found that "it [is] impossible to determine the precise nature of [Father's] income, the sources of the income and what they are, and as such [the Court] will fall back on the child support guidelines, which say that the Court shall impute income in the amount of $25,761 annually . . . . the Court's satisfied that the $25,761 is a fair approximation of what it is that he earns." The juvenile court based this determination of Father's income on Tenn. Comp. R. & Regs. ch. 1240-2-4.03(3)(e) which states:

> When establishing an initial order and the obligor fails to produce evidence of income (such as tax returns for prior years, check stubs, or other information for determining current ability to support or ability to support in prior years), and the

court has no other reliable evidence of the obligor's income or income potential, gross income for the current and prior years should be determined by imputing annual income of $ 25,761. This figure represents an average of the median annual income for Tennessee families as provided by the 1990 U.S. Census of Income and Poverty data for Tennessee Counties.

Mother contends that Father should be imputed approximately $53,000[1] in income because of his use of funds from Pearly Gate's bank account entitled "housing allowance." Mother offered a year's worth of bank statements into evidence to show that Father uses the church account for numerous personal expenses. Mother contends that this bank account is for the use of Father and therefore the entire account, minus documented business expenses of the church, should be imputed to Father as income for child support purposes. Father contends that he is paid a salary of $250 per week, and his child support should be based on this salary minus his existing $231 per month child support obligation.

The Guideline quoted above directs our inquiry in this matter. Father presented no tax returns, or check stubs to establish his income. The juvenile court, therefore, had to determine whether the evidence presented concerning Father's income was "reliable" and if not, impute Father with $25,761 for his annual income. After a full hearing on the matter, the juvenile court found that it could not determine Father's income and used the Guideline amount to set child support.

Our review of the record confirms the juvenile court's determination. Father offered no documentation of his salary. Father offered no bank records from his own personal bank account. Father testified that he is paid a salary of $250 a week. Father further testified that his monthly expenses consisted of a mortgage of $1,065, a payment of over $200 on another loan, two credit cards, a gas card, car insurance, $231 for support of another child, a cell phone, cable television, and $205 a month for Blue Cross/ Blue Shield. Mother offered the records of a Pearly Gate's bank account that showed Father writing checks for various amounts for these monthly expenses. Father explained that each month he receives his salary and additional money from his wife and then makes deposits into the church account. Father testified that this money is the money used to pay his personal expenses. No records, however, were kept as to which deposits made into the church's housing account were made by Father to cover checks written by him for personal expenses, and which deposits were made by the church. Father also testified that sometimes he would use his own credit card for church expenses and that the church would pay him back in payments written directly to the credit card company from the housing account. No records, however, were kept of these transactions.

An examination of the bank documents and testimony in the record before us, however, does not fully support Father's assertions as to his income. As the juvenile court stated, Father's testimony is so clouded that it is impossible to determine the amount of his income. Father testified

---

[1]  Mother arrives at the $53,000 figure by totaling the deposits made into the housing account.

in answer to questions from his counsel that he has no other source of income other than the salary from the church which is a "maximum of $250 a week." In response to the question "when you would preach at other churches and they would give you money, you considered that the church's money, not your personal income," Father replied "[t]hat's correct" and testified that he deposited money received from preaching at other churches into Pearly Gate's account. Later, however, Father testified that when a certain check from Pearly Gate bounced, he used his own funds to cover the check. When asked where he received the funds, Father replied "when I go preach, you know, I get different honoraries [sic] from different churches." Father's wife also testified that when he preaches in different churches he receives a "love offering."

The bank records of the church show a number of checks written to cash. When asked about this, Father replied that the church pays musicians, security personnel, and guest speakers for their services in cash because of a history of bounced checks to these individuals resulting in their preference to be paid in cash. The record submitted to this court contains approximately six months of bank records from Father and his wife's joint account, an account that is used primarily by Father's wife. These records show deposits on two different occasions of a check written to cash from the church's housing allowance account. While there may be a perfectly legitimate reason for these deposits, such as repayment for loans given by Father's wife to the church,[2] the records show money going from the church into this account, and not money going from this account into the church's account for payment of Father's expenses as Father testified.

A survey of the year's worth of records of the housing account of Pearly Gate shows that Father wrote approximately $24,000 worth of checks to the various accounts he testified were his personal expenses. Because of the accounting practices of the church and of Father, there is no way to distinguish whether these checks were paid with funds deposited by Father or funds deposited by the church. It is also impossible to tell if some of the checks were direct payments to Father's creditors meant to reimburse Father for personal funds spent on church expenses.

As to Mother's assertion that the entire amount of deposits made into the housing allowance account should be imputed to Father as income, we agree with the juvenile court that although Father's income cannot be determined with precision, it does not consist of the entire amount deposited in the church's housing allowance account. The records and testimony reveal, and Mother concedes in her brief, that there are legitimate church expenses being paid from this account. Thus, we find that the evidence does not preponderate against the juvenile court's implied finding of fact that the entire amount deposited in the church's housing account is not Father's income and we find that juvenile court did not abuse its discretion by imputing Father with an income of $25,761 for the purposes of setting child support.

---

[2] Testimony was given that Father's wife has loaned the church money on many occasions and is one of the church's main financial supporters.

**Conclusion**

For the foregoing reasons, we affirm the ruling of the juvenile court. Costs are taxed to Appellant, Felicia Webb for which execution may issue if necessary.

_____

ALAN E. HIGHERS, JUDGE