IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
ASSIGNED ON BRIEFS OCTOBER 31, 2002

## IN THE MATTER OF: S. M. S., D.O.B. 10-28-91

**Direct Appeal from the Juvenile Court of Memphis and Shelby County
No. B7551; The Honorable Harold W. Horne, Special Judge**

_____

**No. W2001-02999-COA-R3-JV - Filed January 27, 2003**

_____

This appeal arises from a child custody proceeding. The juvenile court granted custody to the mother. This appeal ensued. For the following reasons, we remand for further findings of fact.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Juvenile Court Remanded**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY KIRBY LILLARD, J., joined.

Kim G. Sims, Memphis, TN, for Appellant

Anastacia Frost, Memphis, TN, *pro se*

### MEMORANDUM OPINION[1]

### Facts and Procedural History

The minor child was born in November 1991 to Anastacia Naomi Naugle-Otto Frost ("Ms. Frost"). At the time of the child's birth, Ms. Frost was fourteen (14) years of age. On July 23, 1991, Sharreth Ann Naugle (Ms. Naugle), mother of Ms. Frost, filed a petition to establish parentage. On June 16, 1992, the juvenile court found Alonzo Demetrius Story to be the father of Ms. Frost's child. On the same day, the juvenile court awarded custody of the minor child to Ms. Naugle. Ms. Frost and her child continued to live with Ms. Naugle until Ms. Frost was nineteen (19) years of age.

---

[1] Rule 10 (Court of Appeals). Memorandum Opinion. - This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

On February 3, 2000, Ms. Frost filed a "Petition to Modify Order." Ms. Frost, alleging that circumstances had changed in that she had provided a home for the minor child for three (3) years, asked that custody and guardianship of the minor child be removed from Ms. Naugle and placed with Ms. Frost. The juvenile court heard the cause on February 17, 2000 and found that the case should be continued. On March 9, 2000, the juvenile court again heard the case and again ordered that the matter be continued. The case was heard on April 13, 2000 and continued until May 11, 2000. On May 4, 2000 the juvenile court appointed a special advocate to serve as guardian and to act on behalf of the minor child. The case was again heard on May 11, 2000, at which time the juvenile court granted another continuance so that the "mother and step-father [had] time to complete parenting classes before custody of said child is awarded to them." On July 3, 2000, the juvenile court terminated the appointment of the special advocate.

On July 13, 2000, the juvenile court dismissed Ms. Frost's petition, finding that it was appropriate for Ms. Frost to have custody of her child, but that it was not in the best interests of the child at this time. The court further directed that the parents should complete family counseling before any change in custody should be made. Ms. Frost filed her second "Petition to Modify Order" on January 19, 2001. She again asked the court to remove custody from Ms. Naugle and to place custody of the child with her. On February 15, 2001, the court recommended that the case be continued until March 22, 2001 and that Ms. Frost and Ms. Naugle undergo counseling together. On March 22, 2001, the court again heard the case and again ordered a continuance.

On April 26, 2001, the juvenile court, based upon the entire record and the proof introduced, found that the June 16, 1992 order of the court should be modified. The referee recommended that the minor child "be removed from the custody and guardianship" of Ms. Naugle and that custody be awarded to Ms. Frost. Ms. Naugle filed a "Request for Hearing Before the Judge" on April 27, 2001. The cause was heard by a special judge of the juvenile court on July 12, 2001. Upon good and sufficient cause, the judge ordered a continuance until August 23, 2001. On July 25, 2001, the juvenile court appointed a special advocate to serve as guardian and to act on behalf of the minor child. An order for continuance was again ordered by the juvenile court on August 23, 2001. On September 6, 2001, the court issued another order for continuance. On November 8, 2001, the special judge found that the juvenile court referee's ruling of April 26, 2001 should be reconfirmed. The juvenile court terminated the appointment of the special advocate on November 13, 2001.

Ms. Naugle filed her notice of appeal on December 5, 2001. On August 26, 2002, this Court issued an order which gave Ms. Frost fifteen (15) days to show cause why this appeal should not be submitted for decision on the record and Ms. Naugle's brief. Ms. Frost did not timely respond. On October 29, 2002, this Court issued an order stating that this appeal would be submitted for decision on the record and Ms. Naugle's brief.

**Issues**

The parties raise the following issues for our review:

1.     Whether a material change of circumstance existed to warrant a change of custody.

2.     Whether the trial court erred in not applying the exigent and compelling circumstance exception to the Parental Rights Doctrine.

3.     Whether the change of custody was in the best interest of the child.

4.     Whether the trial court erred in refusing to award the grandmother visitation.

## Standard of Review

The findings of fact made by a trial court are given a presumption of correctness that will not be overturned unless the evidence preponderates against those findings. See Tenn. R. App. P. 13(d); see also Bank/First Citizens v. Citizens and Assoc., 82 S.W.3d 259, 262 (Tenn. 2002) (citing Bogan v. Bogan, 60 S.W.3d 721, 727 (Tenn. 2001)). A trial court's ruling on a matter of law, however, will be reviewed "'under a pure *de novo* standard . . . according no deference to the conclusions of law made by the lower court[].'" Bank/First Citizens, 82 S.W.3d at 727 (quoting Southern Constructors, Inc. v. Loudon County Bd. of Educ., 58 S.W.3d 706, 710 (Tenn. 2001)). When the trial court does not make specific findings of fact, we must conduct a review of the record to determine where the preponderance of the evidence lies. Ganzevoort v. Russell, 949 S.W.2d 293, 296 (Tenn. 1997) (citing Kemp v. Thurmond, 521 S.W.2d 806, 808 (Tenn. 1975)).

## Law and Analysis

In the case *sub judice*, the juvenile court referee found that "upon proof introduced and the entire record" that the previous order granting custody of the minor child to Ms. Naugle should be modified. The referee recommended that the minor child be removed from the custody and guardianship of Ms. Naugle and that custody of the child be given to Ms. Frost. On November 8, 2001, the juvenile court special judge, based "upon proof introduced and the entire record," reconfirmed the referee's ruling of April 26, 2001. Ms. Naugle now appeals this order.

During the pendency of this appeal, our Supreme Court has rendered two decisions which bear directly on the issues presented in this case. In May of 2002, the Court considered a case with a similar factual background. Blair v. Badenhope, 77 S.W.3d 137 (Tenn. 2002) addressed the question of what standard should be applied when considering a petition to modify custody filed by a natural parent seeking to change custody from a non-parent. The Court held:

that a natural parent cannot generally invoke the doctrine of superior parental rights

to modify a valid order of custody, even when that order resulted from the parent's voluntary consent to give custody to the non-parent. Instead, a natural parent seeking to modify a custody order that grants custody to a non-parent must show that a material change in circumstances has occurred, which makes a change in custody in the child's best interests.

Id. at 139.

The Supreme Court has since reaffirmed the above holding in Kendrick v. Shoemake, No. E2000-01318-SC-R11-CV, 2002 Tenn. LEXIS 489 (Tenn. Nov. 1, 2002),

> The principal issue in this case concerns the proper standard to be applied to a petition to modify custody from one parent to the other parent. This issue is largely resolved by our recent decision in Blair v. Badenhope, 77 S.W.3d 137 (Tenn. 2002). Blair involved a custody dispute between a parent and a non-parent. We concluded that once a valid order of custody has been issued, subsequent custody modification proceedings should apply the "standard typically applied in parent- vs-parent modification cases: that a material change in circumstances has occurred, which makes a change in custody in the child's best interests." 77 S.W.3d at 148.  As explained in Blair, the "threshold issue" is whether a material change in circumstances has occurred after the initial custody determination. 77 S.W.3d at 150. While "there are no hard and fast rules for determining when a child's circumstances have changed sufficiently to warrant a change of his or her custody," the following factors have formed a sound basis for determining whether a material change in circumstances has occurred: the change "has occurred after the entry of the order sought to be modified," the change "is not one that was known or reasonably anticipated when the order was entered," and the change "is one that affects the child's well-being in a meaningful way." Id. (citations omitted). We note that a parent's change in circumstances may be a material change in circumstances for the purposes of modifying custody if such a change affects the child's well-being.  If a material change in circumstances has occurred, it must then be determined whether the modification is in the child's best interests.  This determination should be made according to the factors enumerated in Tennessee Code Annotated section 36-6-106.

Id. at *7-8.  (footnotes omitted).

From the record before us, we are unable to discern whether the juvenile court applied the correct standard.  The record is void of any finding of a material change in circumstance warranting a change in custody and no mention is made of a best interest analysis.  The only insight into the juvenile court's reasoning is the court's comment in its ruling from the bench that "the law says that parents are to raise their children, not grandparents."

The record before us is insufficient to make the determinations prescribed by the above cases and the applicable statute on best interest determination.  Thus, under Tennessee Code Annotated section 27-3-128, we remand to the juvenile court to make the additional findings of

fact.[2]

## Conclusion

Accordingly, we remand this case to the juvenile court for proceedings consistent with this opinion. Costs on appeal are assessed equally against the Appellant, Sharreth Naugle, and her surety, and the Appellee, Anastacia Naomi Naugle-Otto Frost, for which execution may issue if necessary.

_____

HIGHERS, J.

---

[2] Section 27-3-128 provides as follows: The court shall also, in all cases, where, in its opinion, complete justice cannot be had by reason of some defect in the record, want of proper parties, or oversight without culpable negligence, remand the cause to the court below for further proceedings, with proper directions to effectuate the objects of the order, and upon such terms as may be deemed right. Tenn. Code Ann. § 27-3-128.