# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### MARCH 20, 2003 Session

## R. P. INDUSTRIES, INC. v. UNITED STATES ALUMINUM CORPORATION - CAROLINA

**Direct Appeal from the Circuit Court for Davidson County**
**No. 00C-347      Carol Soloman, Judge**

---

**No. M2002-00897-COA-R3-CV - Filed October 15, 2003**

---

This appeal arises from a dispute over an agreement to issue joint checks. The trial court found that the parties had an agreement whereby the general contractor was to issue checks jointly payable to the sub-contractor and the materials supplier, which the general contractor breached when it issued single payee checks. The court awarded the materials supplier $17,500.00. The parties raise two issues on appeal. For the following reasons, we affirm in part, reverse in part, and remand.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed in Part, Reversed in Part and Remanded**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Gregory L. Cashion, Nashville, TN, for Appellant

Joel T. Galanter, Nashville, TN; Scott A. Frick, Memphis, TN, for Appellee

## OPINION

### Facts and Procedural History

R.P. Industries ("RPI") was the general contractor that constructed a car dealership in Nashville for Carmax. Asheville Plate Glass ("APG"), a subcontractor on this project, was to furnish and install all the glass for the storefront as well as the windows and doors. United States Aluminum Corporation- Carolina ("USAC") supplied materials used on the project to APG.

USAC requested that APG execute a Joint Check Agreement with RPI. In January of 1999, APG gave USAC a joint check agreement purportedly signed by RPI. This agreement provided that checks issued by RPI would be payable jointly to APG and USAC.

On March 16, 1999, USAC sent a letter to RPI seeking RPI's "cooperation in issuing 'joint checks' payable to" APG and USAC. Thereafter, on May 3, 1999, RPI transmitted a fax to USAC confirming that the joint check had been prepared. The fax also stated that USAC would be paid by joint check once RPI received a lien waiver. USAC responded on May 14, 1999 by sending RPI a Conditional Waiver and Release Upon Progress Payment which indicated that RPI would issue a joint check. Upon receipt of the waiver, RPI forwarded the check to APG with instructions that APG was to endorse the check and forward it to USAC. Instead of complying with these instructions, APG endorsed the check and placed it in its account.

APG sent USAC a check in the amount of $6,194.00 on May 15, 1999 and a check in the amount of $27,446.42 on May 25, 1999. No one at USAC inquired as to why they did not receive a joint check in the amount fo $45,000.00. At the same time RPI issued the $45,000.00 joint check to APG and USAC, RPI issued a joint check in the amount of $49,255.00 to APG and Viracon, another supplier.[1]

After issuing the joint check for $45,000.00, an RPI employee authorized the payments to be released directly to APG. RPI paid $17,500.00 solely to APG with four additional payments in the amounts of $5,000.00; $5,000.00; $5,000.00; and $2,500.00. At the time RPI issued these direct payments to APG, RPI had no knowledge that APG had not paid its suppliers, both USAC and Viracon with the two joint checks. USAC continued to supply materials to APG in June and July of 1999. It was not until August 10, 1999 that USAC notified RPI that it was owed $31,823.24 on the Carmax project. On August 19, 1999, RPI wrote USAC advising them that a joint check in the amount of $45,000.00 had been issued and requesting that USAC execute an Affidavit of Forged Signature or Missing Endorsement to be given to RPI's bank.

On February 4, 2000, USAC filed suit against RPI, seeking payment for materials provided by USAC on the Carmax project. USAC claimed that it was entitled to recover from RPI for payments it did not receive from APG, pursuant to a joint check agreement between RPI and APG. The complaint also named APG, The Bank of Nashville, and Branch Bank & Trust as defendants.[2]

RPI filed its answer on April 17, 2000 and later amended this answer on April 9, 2001. In its amended answer, RPI alleged that the joint checking agreement was a forgery. The trial court entered an agreed order allowing RPI to amend its answer on April 30, 2001.

---

[1] To protect its interest, Viracon filed a lien against the Carmax project in the amount of $29,000.00, which RPI paid. USAC did not file a lien on the project.

[2] These parties, however, are not relevant to this appeal. Prior to trial, the court granted a motion to dismiss the Bank of Nashville and Branch Banking & Trust. Thereafter, on March 12, 2001, the trial court entered a default judgment against APG for its failure to appear or otherwise respond to USAC's summons and complaint as well as its failure to respond to the notice of the motion for default judgment. On April 5, 2001, the trial court entered an order awarding USAC a judgment against APG in the amount of $31,823.24. Apparently, USAC has not attempted to enforce this judgment.

USAC filed a motion for summary judgment on September 6, 2001, asserting that it was entitled to summary judgment because RPI had breached a joint checking agreement and that there were no genuine issues of material fact. Subsequently, RPI filed a motion for summary judgment. There is no record of a ruling on either of these motions.

The trial was held on February 26, 2002 and the final order entered on March 20, 2002. The court found that the joint check agreement between RPI and APG was forged and was thus invalid. However, the court found that the parties subsequently entered into an agreement to issue joint checks. The court further found that RPI violated this agreement "by not sending three checks totaling Seventeen Thousand Five Hundred 00/100 Dollars ($17,500.00)."[3] Stated another way, the court found that RPI violated the agreement by issuing these checks solely to APG. The court also found that RPI did not have an obligation to ensure that APG "did not commit a felony by cashing the checks without the express permission of United States Aluminum Corporation or the signature of both parties." Instead, RPI's only duty was to issue joint checks. The court awarded USAC $17,500.00.

RPI filed its notice of appeal on April 12, 2002. On April 18, 2002, USAC filed a Motion to Alter or Amend Judgment and for Discretionary Costs, seeking prejudgment interests and costs. Thereafter, on May 21, 2002, the judge issued an amended order awarding USAC prejudgment interest and discretionary costs. RPI filed its second notice of appeal on June 18, 2002. This Court granted RPI's motion to consolidate on July 1, 2002. The parties raise the following issues for our review.

### Issues

I.  Whether the trial court erred in finding that there was an agreement between the parties to issue joint checks.

II. Whether the trial court erred in finding that RPI is only liable for $17,500.00, instead of $33,114.79 which is the full outstanding balance on the account, for its breach of the agreement to issue joint checks.

### Standard of Review

The findings of fact made by a trial court are given a presumption of correctness that will not be overturned unless the evidence preponderates against those findings. See TENN. R. APP. P. 13(d); see also Bank/First Citizens v. Citizens and Assoc., 82 S.W.3d 259, 262 (Tenn. 2002). A trial court's ruling on a matter of law, however, will be reviewed "'under a pure *de novo* standard . . . according no deference to the conclusions of law made by the lower court[].'" Bank/First Citizens, 82 S.W.3d at 727 (quoting Southern Constructors, Inc. v. Loudon County Bd. of Educ., 58 S.W.3d 706, 710 (Tenn. 2001)).

---

[3] While the trial court's order dated March 20, 2002 states that there were three (3) checks in the total amount of $17,500.00, the record reveals that there were four (4) checks in the total amount of $17,500.00.

**Law and Analysis**

RPI first argues that it never entered into a joint check agreement with any party in this case. Specifically, RPI asserts that the trial court erred in finding that USAC's March 16, 1999 letter constituted an agreement to issue joint checks. RPI asserts that the letter was a unilateral act by USAC and that RPI never communicated with USAC in response to the letter. RPI further argues that there was no mutual assent, no offer, no acceptance and no consideration and that without these elements there can be no contract.

In response, USAC argues that even if the original joint check agreement was a forgery and thus invalid, that the parties subsequently reached an agreement to issue joint checks. USAC asserts that the March 16, 1999 letter indicated that USAC expected to receive payment by joint check and that RPI, through is May 3, 1999 facsimile, agreed to issue a joint check upon receipt of a partial lien waiver signed by USAC. USAC asserts that it gave consideration in the form of continuing to supply all material to the job and by executing the lien waiver. USAC asserts that RPI breached this agreement by "failing to properly complete the payee designation of the check." USAC also asserts that RPI's failure to properly execute the $45,000.00 check as a joint check and the "subsequent disregard of this agreement by issuing three additional checks totaling $17,500.00 made payable solely to [APG]" caused USAC to be underpaid on the project. As a result, USAC asks this Court to hold RPI liable in the amount of $33,114.79, which represents USAC's unpaid balance on the project.

A contract is simply an agreement, based upon adequate consideration, "to do or not do a particular thing." Johnson v. The Central National Insurance Company of Omaha, Nebraska, 356 S.W.2d 277, 281 (Tenn. 1962) (citations omitted). A contract may be either express or implied, written or oral and "must result from a meeting of the minds of the parties in mutual assent to the terms, must be based upon sufficient consideration, . . . and sufficiently definite to be enforced." Id. at 281 (citing American Lead Pencil Co. v. Nashville, Chattanooga & St. Louis Ry. Co., 134 S.W. 613 ( Tenn. 1910)).

Within the framework of the above contract principals, we now turn to the documents at issue. The March 16, 1999 letter provides in pertinent part as follows:

Gentlemen:

We are material suppliers on the above job furnishing commercial aluminum storefronts, sections & entrances to your sub-contractor, Asheville Plate Glass. It has been our experience in the last six months that 15% to 20% of pre-arranged joint check payment agreements are inadvertently paid solely to sub-contractor.

As this may subject all parties to unnecessary liability, we ask your cooperation in issuing "joint checks" payable to Asheville Plate Glass and United States Aluminum Corporation/Carolina. Your assistance would be appreciated.

We thank you and wish you well on favorable completion of this job.

Sincerely,
*UNITED STATES ALUMINUM CORPORATION/CAROLINA*

The May 3, 1999 facsimile provides in pertinent part as follows:

A joint check with Asheville Plate Glass Co., 276 Haywood Road, Asheville, NC has been prepared by us. Please fully complete and execute the attached partial lien waiver and return by fax to the undersigned to FAX #(615) 595-2476. Upon receipt of same we will forward your joint check to Asheville Plate Glass by regular mail to be endorsed and sent on to you. Should you have any questions, please do not hesitate to contact me at (615) 595-2422.

We find that USAC's March 16, 1999 letter in and of itself was insufficient to support a finding of a joint check agreement. The letter made a vague reference to "pre-arranged joint check payment agreements" and simply expressed USAC's desire for RPI's "cooperation in issuing 'joint checks.'" We do find, however, that the parties did have an agreement to issue a joint check in the amount of $45,000.00. In its May 3, 1999 facsimile, RPI stated that upon receipt of a partial lien waiver, a joint check would be issued to APG to be forwarded to USAC. As consideration, USAC sent RPI a partial lien waiver that covered a "progress payment for labor, services, equipment or material furnished to Asheville Plate Glass through April 30, 1999 only and [did] not cover any retention or items furnished after said date." In its facsimile, RPI offered to execute and forward a joint check if USAC executed a partial lien waiver, which it did. We find that there was an offer, acceptance, consideration and mutual assent and thus a valid agreement.

We do not find, however, that there was sufficient evidence to support a finding of an ongoing joint check agreement that encompassed the four (4) additional payments in the amount of $17,500.00. The May 3, 1999 facsimile and the May 14, 1999 partial lien waiver referenced a joint check in the amount of $45,000.00. There are no documents in the record that support an agreement to issue joint checks thereafter. We find no evidence of offer, acceptance, consideration, or mutual assent sufficient to find that there was an ongoing agreement to issue joint checks. Thus, RPI had no duty to issue the four (4) additional payments in the total amount of $17,500.00 in the form of joint checks. RPI's only duty was to issue a joint check in the amount of $45,000.00.

On April 30, 1999, RPI executed a check in the amount of $45,000.00 payable to "ASHEVILLE PLATE GLASS/ US ALUMINUM JTLY." APG endorsed the check and Branch Bank & Trust and the Bank of Nashville issued payment on the check. The Banks subsequently filed motions to dismiss, which the trial court granted. In its brief, USAC claims that in ruling on the Banks' motions to dismiss, the trial court held that the payee designation on the check was ambiguous and that the check was payable alternatively to APG or USAC. The order cited by USAC in their brief contains no such ruling. The order merely states that the Banks' motions to dismiss are well taken and should be granted. The slash mark or virgule which separated the names of the

payees on the check is used "to separate alternatives." *American Heritage Dictionary.* See also T.C.A. § 47-3-110(d). The abbreviation "JTLY" appears, in retrospect, to mean "jointly" but there apparently was a question raised in the trial court about this terminology. Thus we remand for a determination as to RPI's liability, if any, regarding the issuance of the $45,000.00 check.

USAC argues in the alternative that if it is found that there was not an express contract, then there was an agreement implied in fact to issue joint checks. Specifically, USAC argues that RPI accepted USAC's materials for the Carmax project with the express understanding that USAC expected to be paid in the form of joint checks. Our finding that there was an express agreement to issue a joint check in the amount of $45,000.00 renders any discussion of this point moot. USAC advances no argument that it should be entitled to the $17,500.00 due to a contract implied in fact.

USAC also argues in the alternative that RPI should be estopped from denying its representation that a joint check would be issued. This argument, however, was not raised in the trial court and as such we will not considered on appeal. See Lawrence v. Stanford, 655 S.W.2d 927, 929 (Tenn. 1983) (holding that issues not properly raised at trial cannot be raised for the first time on appeal).

**Conclusion**

Accordingly, we affirm in part, reverse in part and remand. We affirm the trial court's finding that there was an agreement between the parties to issue a joint check in the amount of $45,000.00, reverse the trial court's award of $17,500.00 in damages, and remand for proceedings consistent with this opinion. Costs on appeal are assessed equally against the Appellant, R.P. Industries, Inc., and its surety, as well as Appellee United States Aluminum Corporation-Carolina, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE